```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

THOMAS G. DESPART,

                Plaintiff,

vs.                              Case No.   2:08-cv-729-FtM-29DNF

TIMOTHY BUDZ, Facility administrator of the Florida Civil Commitment Center,

                Defendant.
_____

## ORDER OF DISMISSAL

This matter comes before the Court upon review of the file. Plaintiff, a civil detainee at the Florida Civil Commitment Center ("FCCC"), initiated this action by filing a "42 U.S.C. § 1983 Civil Rights Violation Complaint" (Doc. #1, Complaint). Plaintiff attaches to his Complaint copies of the following documents: a Resident Communication Form (Doc. #1-2), a Memorandum dated August 7, 2008 from Timothy Budz to the Residents in F Dorm, Quad 1 (Doc. #1-3), an FCCC Resident Grievance Appeal and FCCC Resident Grievance (Doc. #1-4), and an Insulin Dosages report (Doc. #1-5). Plaintiff seeks to proceed *in forma pauperis* in this action. See Affidavit of Indigence (Doc. #2).

Plaintiff alleges that Defendant Budz violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution. Complaint at 3. The basis of Plaintiff's Complaint stems from the an administrative decision to impose a curfew in F dorm, where Plaintiff resides. The decision was made by Timothy J.

Budz, the Facility Administrator at the FCCC. The Complaint alleges that Plaintiff "was confined to room restriction for over 12 hours." Id. Additionally, he was placed on "quad restriction for 3 days." Id. Plaintiff complains that he was not afforded a hearing prior to being placed on restriction. Id. As a result of being confined, Plaintiff, who is a diabetic, alleges his blood sugar became "unstable" because he was unable to exercise. Id. at 4. As relief, Plaintiff seeks compensatory and punitive damages. Id. at 5.

Despite Plaintiff's non-prisoner status, before the Court grants Plaintiff *in forma pauperis* status and directs the U.S. Marshal to serve his Complaint on Defendants, the Court is required to review Plaintiff's Complaint to determine whether the complaint is frivolous, malicious or fails to state a claim.[1] See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings. The Court, nonetheless, must read Plaintiff's *pro se*

---

[1] The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to Plaintiff due to his status as a civil detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err by dismissing a Complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. Section 1915 (e)(2)(B). Id. at 1260. Other Courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

allegations in a liberal fashion. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

A complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Rather, the test for granting a § 1915 dismissal is whether the claim lacks arguable merit either in law or fact. Id. at 325; Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346 (11th Cir. 2001). Additionally, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," Nietzke, 490 U.S. at 327; when the claims rely on factual allegations which are "clearly baseless" Denton v. Hernandez, 504 U.S. 25, 32 (1992); or, when it appears that the plaintiff has little or no chance of success. Bilal, 251 F.3d at 1349.

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the

defendant's conduct and the constitutional deprivation.  <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001); <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988, 999 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

Based upon a review of the Complaint and the attachments thereto, the Court finds that Plaintiff's Complaint fails to articulate a claim upon which relief can be granted.  The Court takes judicial notice that the State of Florida enacted the Jimmy Ryce Act, by which a person who is determined to be a sexually violent predator[2] is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large."  Fla. Stat. § 394.917(2).  The Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." <u>Westerheide v. State</u>, 831 So.2d 93, 112 (Fla. 2002); <u>see</u> <u>also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement

---

[2]A "sexually violent predator" is defined by the Act as any person who:

> (a) has been convicted of a sexually violent offense; and
> (b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

Fla. Stat. § 394.912(10) (2002).

pursuant to the Act was not punitive).³ The Florida legislature, in its statement of "findings and intent," explained that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)." Fla. Stat. § 94.910 (2000). Thus, residents at the FCCC are considered "totally confined," and subject to certain internal regulations much like those established by the Florida Department of Corrections. See Fla. Stat. § 394.912(11).

A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)(in that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). See also Lavender v. Kearney, 206 Fed. Appx. 860, 862 (11th Cir 2006). Thus, while

---

³"Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So. 2d at 99 n.6.

residents at the FCCC are subject to such internal regulations, they are due a higher standard of care than those who are criminally committed. See id. Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id.

The United States Supreme Court has recognized that not every restriction imposed during confinement "amounts to punishment in the constitutional sense." Bell v. Wolfish, 441 U.S. 520, 537 (1979). Whether the restriction is incident to a legitimate governmental purpose or whether the restriction is imposed as punishment, is determinative of whether the particular restriction amounts to punishment under the Due Process Clause. Id. at 538. Absent an institution's expressed intent to punish a detainee, this determination "generally will turn on whether there is an alternate purpose rationally connected to the restriction," and whether the restriction appears excessive based on the alternate purpose supporting it. Id. In other words, if a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id. at 539-40. However, if it "is not reasonably related to a legitimate goal - - if it is arbitrary or purposeless- a court may infer that the purpose" is punishment. Id. at 539.

According to the documents attached to the Complaint, the restriction, i.e., curfew, imposed upon Plaintiff, as well as the other residents of F Dorm, Quad 1, was not imposed for punishment, but was imposed due to issues that threatened the operation and security of the FCCC. In particular, Timothy Budz, in an August 7, 2008 Memorandum directed to "All Residents in F Dorm, Quad 1" explained the reasons for imposing the curfew as follows:

> I am concerned that your refusal to follow staff direction and return to your rooms last night at 11:30 p.m. has contributed to an institutional crisis that threatens the orderly operation and security of FCCC. This situation is further exacerbated by your continued threats during the day today to disrupt the normal operations and security of FCCC. After a lengthy discussion with your treatment team members, the following will occur the rest of today and tomorrow:
>
> > 1. You will remain secured in your rooms through at least 9:00 a.m. on Friday, 8/8 due to the imminent threat that your failure to follow staff direction poses to the security of FCCC.
> >
> > 2. Your treatment team including security will assess tomorrow morning whether or not the threat to the institution has subsided. If it has subsided, your unit will be returned to normal operations. This assessment will be based, in part, on your behaviors during the night and morning.
> >
> > 3. When you are released from your rooms, you will be expected to comply with all staff directives and operating procedures. This will include all TV's being turned off at curfew each night. This will remove a distraction and permit you to receive adequate rest to fully participate in the Rise & Shine group every morning at 8:00am and to participate in a full day of mental health programming.

>        4.   All residents on F Dom, Quad 1 will be
> expected to return to your rooms at the designated curfew time
> every night. The decision whether to have your room doors secured
> or left open each night will be partly determined based upon your
> behaviors.
>
> 5. You will be required to remain in your assigned room after
> curfew each night even though your room door may be unsecured. No
> one will be allowed to remain in the day room after curfew.
>
>        6. The door to the Quad will be secured at
>        curfew each night. Failure to follow all staff
>        directives may result in additional individual
>        and group consequences for F 1.
>
>    Thank you for your cooperation in keeping [the] FCCC a
>    safe place to live and work.

Complaint (Doc. #1-3) at 1.  Plaintiff was afforded an opportunity to challenge the curfew, and similarly was advised in response to his grievance that:

> [d]ue to security concerns arising from incidents, which
> were taking place on wing one of F-Dorm, Mr. Budz found
> it necessary to place all residents of wing one onto wing
> restriction for the safety of the residents and staff
> assigned to F-Dorm.  Once the problem were resolved the
> wing was taken off restriction.

Id. (Doc. #1-4) at 2.  Based upon the face of the Complaint it is clear that the curfew imposed upon the residents of F-Dorm, Quad 1 fails to give rise to a due process claim.  The restriction was expressly implemented due to internal security issues to ensure safety for the staff and residents and was limited in scope and duration.  Consequently, the Court "must accord substantial defererence to the judgment" of Mr. Budz, as the administrator of the FCCC in this situation.  Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

ACCORDINGLY, it is hereby

**ORDERED:**

1. Plaintiff's motion to proceed *in forma pauperis* (Doc. #2) is **DENIED**.

2. The Complaint (Doc. #1) is dismissed without prejudice for failure to state a claim.

3. The Clerk of Court shall: (1) enter judgment accordingly; (2) terminate any motions; (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __29th__ day of October, 2008.

_____
JOHN E. STEELE
United States District Judge


SA: hmk
Copies: All Parties of Record